IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

AIKEN DIVISION

| | | |
|---|---|---|
| RICHARD L. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:03-0129-HFF-BM |
| v. | ) | |
| | ) | |
| BECHTEL SAVANNAH RIVER, | ) | **REPORT AND RECOMMENDATION** |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This action has been filed by the Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq.. Plaintiff originally included claims for both race and religious discrimination in his Complaint; see Amended Complaint, filed February 19, 2004; however, Plaintiff's claim of religious discrimination was dismissed by stipulation filed June 17, 2004. Therefore, only Plaintiff's race discrimination claim remains to be litigated in this lawsuit.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on November 24, 2004. After receiving an extension of time to respond to the motion, Plaintiff filed a memorandum in opposition on December 28, 2004, following which Defendant filed a reply memorandum on January 7, 2005. Defendant's motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

1

## Background and Evidence[2]

Plaintiff is employed by the Defendant at the Savannah River Site (SRS). Plaintiff is on record with the Defendant as being classified as a Native American Indian. Plaintiff's Deposition, pp. 28, 30-31; Deposition Exhibit 1. Plaintiff also identifies himself as a "Confederate Southern American". Plaintiff's Affidavit; Metz Deposition, pp. 31-32; Deposition Exhibit P3.

The SRS is a nuclear facility owned by the United States Department of Energy (DOE), which in turn has contracted with the Defendant (a private contractor) to perform certain services at the Site. The Defendant performs its services at the Site subject to the direction of the lead contractor, Westinghouse Savannah River Company, LLC (WSRC). It is undisputed that all contractors at the Site, including the Defendant, are subject to WSRC's diversity and anti-harassment policies. Metz Deposition, pp. 17-18; Austin Deposition, pp. 66-67. WSRC's diversity policy provides, inter alia, that "discrimination, intimidation, abuse, harassment, action or inaction because of [a] person's differences is not tolerated in any form." Plaintiff's Deposition, Exhibit 20 (Defendant's Exhibit E). Under this policy, "racially offensive jokes or banter, remarks, or display of material or graffiti" are prohibited. Plaintiff's Deposition, Exhibit 11.

In addition to this diversity policy, WSRC's policy manual on workplace conduct (which the Defendant is also required to observe) prohibits

> inappropriate or improper actions/gestures that could cause an adverse reaction on the part of other employees, management, or subordinates; [and] acts of intimidation, discrimination, harassment, or retaliation against any individual who has voiced a concern in accordance with the WSRC open communication policy.

---

[2] The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

2

Martin Affidavit, Exhibit 1.

WSRC's policy manual also contains a dress code which prohibits employees from wearing "articles of clothing (including head gear) with writing, diagrams, etc., which are vulgar, profane or otherwise offensive." Plaintiff's Deposition, Exhibit 11, Section 11 [Dress Code]. The Defendant has submitted testimony to the effect that management determines what is offensive or inappropriate under these policies on a case by case basis. See Metz Deposition, pp. 85-86; Pitts Deposition, pp. 38-39 (Defendant's Exhibit F).

The evidence presented to this Court shows that Plaintiff has been counseled or disciplined under these policies because of his display of Confederate symbols at the Defendant's work place. On November 13, 2001, Alphonso Montgomery, an African-American member of the High Level Waste Group (of which Plaintiff was also a member) complained to management about Plaintiff's display of the State Flag of Georgia on a wall in his office. Montgomery Deposition, pp. 44-45, 48 (Defendant's Exhibit G); Metz Deposition, pp. 52-53; Deposition Exhibit P7. At the time, the Georgia state flag incorporated the Confederate battle flag into its design. The Defendant's operations manager, William Kershner, determined that the Georgia state flag violated WSRC's harassment free workplace policy, and asked Plaintiff to remove the flag as well as some newspaper articles. Metz Deposition, Exhibit P14; Feenstera Deposition, p. 72 (Defendant's Exhibit H). Plaintiff testified that, as a result of this complaint, and out of fear that he would be fired if he did not comply, he removed the flag. Plaintiff's Deposition, pp. 41-42. Plaintiff was not disciplined on this occasion. Plaintiff's Deposition, p. 63.[3]

---

[3]Montgomery subsequently saw the Georgia state flag hanging in the office of another engineer, Jerry Jackson, whose work space was next to the Plaintiff's. It is undisputed that

3

In February 2002, Montgomery again complained to management about items or material Plaintiff had in his work space. Metz Deposition, Exhibit P6. Specifically, Montgomery complained about Plaintiff having a box of "Georgia crackers"[4], a bottle of Maurice Bessinger's Barbeque sauce[5], news articles critical of black politicians, and a Son's of Confederate Veterans coffee mug with a Confederate flag logo. Plaintiff's Deposition, pp. 26, 34, 52-54, 56-57, 104; Montgomery Deposition, pp. 41-42; Plaintiff's Deposition, Exhibits 4 & 6. Montgomery's complaint was investigated by Mark Austin, the Lead Investigator for WSRC's Office of General Counsel. Austin Deposition, pp. 13-14; Plaintiff's Deposition, pp. 45, 48, 53-54,120-121, 155; Metz Deposition, p. 67; Deposition Exhibit P15. Kirk Pitts, the Human Resources Representative for the High Level Waste Group, and Gary Feenstera, the Defendant's Senior Manager in the Start-up Services Division, both also met with Plaintiff to discuss SRS's harassment free workplace policies. Feenstera Deposition, pp. 83-84; Pitts Deposition, p. 33; Plaintiff's Deposition, pp. 51-52; Plaintiff's Deposition, Exhibits 4 & 12. As part of these meetings, Plaintiff was told to remove the cited items from his workplace, and was also instructed not to wear any article of clothing containing Confederate insignia. Plaintiff's Deposition, pp. 52-53, 61, 155; Feenstera Deposition, p. 85.

Approximately five (5) months later, on August 28, 2002, Plaintiff was in a work

---

Plaintiff, after having been told to remove the flag from his office, had given the flag to Jackson. Plaintiff's Deposition, p. 42. Montgomery again complained, this time to WSRC Manager Bruce Beiling, who instructed Jackson's supervisor, Bob Nyland, to take the flag down. Metz Deposition, Exhibits P6-P8; Montgomery Deposition, p. 45; Metz Deposition, pp. 53-54.

[4]A kind of saltine sold at Winn Dixie stores. Plaintiff's Deposition, pp. 52-53.

[5]Plaintiff testified that a small Confederate flag is printed on these barbeque sauce bottles along with a South Carolina state flag and an American flag. Plaintiff's Deposition, p. 56.

4

area wearing a Son's of Confederate Veteran's hat, which had a Confederate flag emblem printed on it. Plaintiff's Deposition, pp. 72-73, 107-108; Deposition Exhibits 9 & 12. Montgomery complained about Plaintiff's hat to management, following which Plaintiff was told by Pitts that he was not permitted to wear the hat on site. Pitts Deposition, pp. 49-51; Plaintiff's Deposition, pp. 74-76. During their conversation, Plaintiff used a profanity ("God damn it"), complained that the Company could not tell him what to wear, and asked that the request to remove the baseball cap be put in writing. Plaintiff's Deposition, pp. 73-75, 110; Plaintiff's Deposition, Exhibits 11-12; Pitts Deposition, pp. 51-52, 56. As a result of this incident, Plaintiff was placed on probation for one (1) year for insubordination and violation of the work site's dress code. Plaintiff's Deposition, Exhibits 11-12; see also Feenstera Deposition, pp. 106-107; Plaintiff's Exhibit 6 [Discipline Meeting Record]. In the Constructive Discipline Assessment documenting his probation, Plaintiff was warned that if issues arose "regarding the Confederate flag, Confederacy, Confederate sh[r]ines, newspaper/publication articles relating to any Confederate organization or movement, dress attire and/or loud outbursts…using profanity…[Plaintiff] may be subject to disciplinary action up to and including termination". Plaintiff's Deposition, Exhibit 11.

Plaintiff claims that the Defendant's actions constitute discrimination against him on the basis of his race, and that he has also been subjected to a racially hostile work environment.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that

5

judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

## I.

### (Race Discrimination Claim)

Plaintiff's race discrimination claim is for disparate treatment, based on his allegation that he was discriminated against at work on the basis of his race (white) when he was denied the right to display Confederate symbols at the workplace. Disparate treatment cases under Title VII require proof of intentional discrimination, either by direct evidence or by the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). Plaintiff does not contend in his opposition memorandum that he has any direct evidence of race discrimination.[6] However, the absence of direct evidence of discrimination is not fatal to Plaintiff's claim, as direct proof of discrimination rarely exists in this type of case. In such a situation, indirect evidence of discrimination may be presented through the McDonnell Douglas framework.[7]

---

[6] Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-549 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996); Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974); see Williams v. General Motors Corp, 656 F.2d 120, 130 (5th Cir. 1981), cert. denied, 455 U.S. 943 (1982).

[7] Consideration of Plaintiff's claim under the so-called "mixed-motive" analysis is also now allowed, even though Plaintiff has presented only circumstantial, or indirect, evidence of discrimination. Hill v. Lockheed Martin Logistics Mgt., Inc., 354 F.3d 277, 284-285 (4th Cir. 2004); see also Mereish v. Walker, 359 F.3d 330, 339-340 (4th Cir. 2004); Machinchick v. PB Power, Inc., 398 F.3d 345, 352 (5th Cir. 2005) [ADEA]. Previously, consideration of a claim under the mixed motive analysis was only proper in direct evidence cases. Here, however, both parties have argued

The United States Supreme Court articulated a three-part analysis for analyzing Title VII discrimination cases in McDonnell Douglas. First, the Plaintiff must establish a prima facie case of discrimination. If a prima facie case is established, a rebuttable presumption is created that the employer unlawfully discriminated against the Plaintiff. Second, once this presumption has been established, the burden of production shifts to the employer to show a legitimate, non-discriminatory reason for its actions. Third, if the employer shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the employer's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the employer were really based [in this case] on the Plaintiff's race. McDonnell Douglas Corp., 411 U.S. at 802-805; Texas Dep't of Community Affairs, 450 U.S. at 252-256; Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991).[8] For the reasons set forth hereinbelow, the undersigned finds that Plaintiff has failed to establish his prima facie case of race discrimination; therefore, Plaintiff's case fails under the first part of the McDonnell Douglas analysis, and it is not necessary to proceed past that point.

As a general rule, in order to meet the first prong of the McDonnell Douglas formula and establish a prima facie case of race discrimination, a Plaintiff must show (1) that he is a member of a protected class; (2) that he was performing his job satisfactorily; (3) that he was subjected to an adverse employment action; and (4) that other employees who were not members of his protected class were treated more favorably, or there is some other evidence giving rise to an

---

Plaintiff's claim only under the traditional McDonnell Douglas proof scheme.

[8]Despite these shifting burdens of production, the Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

inference of unlawful discrimination. See generally, Austen v. HCA Health Services of Virginia, Inc., No. 00-2359, 2001 WL 242203 at **1 (4th Cir. Mar. 12, 2001); St. Mary's Honor Ctr., 509 U.S. at 506-510; Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995), cert. denied, 516 U.S. 870 (1995); Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994). See also Gilbert v. Penn-Wheeling Closure Corp., 917 F.Supp. 1119 (N.D.W.Va. 1996).[9] Here, Plaintiff has failed to establish his prima face case because he has failed to show that any actions taken against him were the result of his being in a protected class.

While both Caucasians and Native Americans are protected classes for purposes of a Title VII race discrimination claim; see Willoughby v. Allstate Ins. Co., 2004 WL 1595201 (6th Cir. 2004) [white employee a member of a protected class]; Raines v. Indianapolis Public Schools, 2002 WL 31688881 (7th Cir. 2002) [Native American is a member of a protected class]; it is readily apparent from a review of the evidence submitted in this case, and indeed Plaintiff's own arguments, that the actions complained of by the Plaintiff have not been directed at him because of his "race", whether Caucasian or Native American. The fact that Plaintiff now attempts to style his claim as a "race" claim (after his previous attempt to have his claim considered as a "national origin discrimination" claim was dismissed, see Order filed May 20, 2003) does not change the fact that he is in reality asserting a claim against the Defendant because of the Defendant's refusal to allow him to have Confederate or "southern heritage" items and memorabilia in his office. This is not a race claim, as one does not have to be white (or Native American) to support recognition

---

[9]Some of these cases use variations of the prima facie case cited hereinabove. See Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995) [The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged.].

of the Confederacy in American history or belong to Confederate heritage organizations. Plaintiff himself testified that the Sons of Confederate Veterans are comprised of members of many different races, including Caucasians, Hispanics, Native American Indians, and African Americans. Plaintiff's Deposition, p. 28. In order to pursue a race discrimination claim under Title VII, Plaintiff must present credible evidence that the alleged adverse employment action he endured was because of his race (i.e., because he is white and/or Native American), not because the Defendant was purportedly incorrect or unfair in its disciplinary actions, or because of other factors. *Cf.* Chaplin v. DuPont Advance Fiber Systems, 293 F.Supp.2d 622, 630 (E.D.Va. 2003) ["Plaintiffs do not claim that (defendant's) ban adversely affects all Caucasians; its negative impact only befalls Caucasian Confederate Southern Americans. Nor do plaintiffs claim that all Confederate Southern Americans are Caucasian. On the contrary, this Court finds no logical connection between (defendant's) alleged discrimination and plaintiff's race."]. See also Jamil v. Secretary Dep't of Defense, 910 F.2d 1203, 1207-1208 (4th Cir. 1990); Holder v. Raleigh, 867 F.2d 823, 828 (4th Cir. 1989); Crowley v. Prince George's County, 890 F.2d 683, 687 (4th Cir. 1989), cert. denied, 111 S.Ct. 101 (1992); McCollum v. Bolger, 794 F.2d 602, 610 (11th Cir. 1986), cert. denied, 479 U.S. 1034 (1987); see generally Moore v. Sears, Roebuck & Co., 683 F.2d 1321, 1323, n. 4 (11th Cir. 1982); Jones v. Orleans Parish School Board, 679 F.2d 32, 38 (5th Cir. 1982), modified on other grounds, 688 F.2d 342 (5th Cir. 1982), cert. denied, 461 U.S. 951 (1983); North Carolina Dep't of Corrections v. Gibson, 301 S.E.2d 78, 85 (N.C. 1983); St. Mary's Honor Ctr. v. Hicks, supra. Plaintiff bears the burden of producing such evidence. Texas Dep't of Community Affairs v. Burdine, supra; St. Mary's Honor Ctr. v. Hicks, supra. He has failed to do so.

Specifically, Plaintiff has not presented any evidence to show the Defendant's actions

were based on his being either white or Native American. Plaintiff conceded at his deposition that he has no knowledge of any racial animus harbored by his supervisors. Plaintiff's Deposition, pp. 28-30, 169. Nor has he offered any evidence to show that any supervisory official involved in this matter ever made any anti-white or anti-Native American comments, or indicated in any way that the actions being taken against the Plaintiff were because of his being white or Native American. See Causey v. Balog, 162 F.3d 795, 801-802 (4th Cir. 1998) [affirming summary judgment where employee failed to show that his employer's alleged mistreatment was based on his race]. The fact that the Defendant prohibited Plaintiff from displaying Confederate items or memorabilia at the work site, standing alone with no other supporting evidence that Plaintiff's race was the reason this decision was made, is simply not enough to state a Title VII claim for race discrimination. *Cf.* Chaplin, 293 F.Supp.2d at 630 [finding "no logical connection between [the Defendant's] alleged discrimination and plaintiff's race"].

In sum, while Plaintiff may or may not have a basis for pursuing this claim under some other federal or state law theory, the only question before this Court is whether Plaintiff has presented sufficient evidence to create a genuine issue of fact as to whether the Defendant's actions were based on his race such as to constitute a *violation of Title VII*. After careful consideration of the arguments presented in conjunction with the applicable caselaw, the undersigned finds that Plaintiff has failed to satisfy this burden, and that the Defendant is therefore entitled to summary judgment on this claim.

## II.

### (Hostile Work Environment Claim)

In addition to a disparate treatment race discrimination claim, Plaintiff also asserted

10

a Title VII hostile work environment claim in his Complaint. However, Plaintiff concedes in his brief that he does not have sufficient facts or evidence to pursue this claim. See <u>Plaintiff's Brief</u>, at pp. 23-24. Therefore, this claim should also be dismissed.

### Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted,** and that this case be **dismissed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

May 16, 2005